Our last case this morning is Exxon Mobil v. AECOM Energy & Construction. We go from wins and losses to lots of money. Off the record, I will comment that the courtroom is emptied out when you're ready. Thank you, Your Honor. I'd like to reserve four minutes for rebuttal. May it please the Court. AECOM did the work that Exxon directed it to do, but AECOM did not want to pay and it didn't pay. Six years later, after a three-week trial, the jury confirmed that Exxon should have paid AECOM for its work and that Exxon owed AECOM a lot of money. But then the district court erroneously and substantially cut back that recovery, ensuring that absent relief from this court, AECOM will never be made even close to whole. AECOM is therefore not challenging the jury's verdict. AECOM is challenging the district court's rulings on three post-judgment motions, verdict construction, the Prompt Payment Act claim, and prejudgment interest. I would like to start with the Prompt Payment Act claim. The Montana Prompt Payment Act is straightforward. Under the default timelines of the act, a contractor submits a monthly invoice. Then the owner has 21 days to dispute the invoice in whole or in part. If there is no dispute, the invoice is deemed accepted. Then the owner has seven days to pay, and after that, that's when the 18 percent penalty interest kicks in. That overrides the milestone requirements in the agreement between the parties? No, the Prompt Payment Act accommodates the milestone requirements because there's a provision in the Prompt Payment Act. It's 28-2115 that allows the parties to alter the time parameters that I just discussed. Subsection 1 of that section first permits the parties to elect an alternative billing regime instead of monthly submission. And here the parties did that. In their contract, they had the milestone completion billing regime. After AECOM reaches a milestone, it asks Exxon to issue a certificate confirming milestone completion, then AECOM invoices. The next subsection, subsection 2, allows the parties to choose a different number of days for the owner to dispute. Remember that. I'm going to go to number 3, which is that allows the parties to choose a different amount of time for the owner to pay after an invoice is either accepted or deemed accepted. And the contract did make a change there. It allowed Exxon 30 days to pay. But subsection number 2, there was no provision in the contract that changed the amount of time that Exxon had to dispute an invoice from AECOM. Please ask my opposing counsel when he comes up, where is that in the contract? It's not there. So when Exxon argues that the parties contracted around the PPA, what the parties did was they, in their contract, had two provisions that addressed two parts of this PPA timeline but did not address the 21-day deadline for asserting a dispute. So the question is not whether they could contract out of the 21 days. The question is whether they did. That's correct. Who drafted the contract? I believe it is Exxon's contract, but we are not making any sort of contractual construction arguments here. Both are sophisticated parties, and the contract says what it says. But it doesn't say anything about Exxon getting more than 21 days to dispute an invoice. So AECOM submitted the six PPA invoices on February 25, 2019, and Exxon did not dispute them. Now, Exxon is, of course, entitled to dispute invoices. There's no question about that. Exxon doesn't have to pay just because an invoice is presented, but it has to timely dispute. That's why they call it the Prompt Payment Act. So Exxon did not assert its set-off defense. That is one of the bases for disputing an invoice. It did not assert that until after 21 days. That's why Exxon's six PPA invoices fell within the Prompt Payment Act. At the time or when these were being sent out, did your side ever object and say, hey, these are late? Well, we asserted the claim on the Prompt Payment Act. I know, but when the money came out and you were paid within 30 days, do your clients say at the time, hey, you're nine days late? I don't know if AECOM made an objection on the lateness. And, by the way— Well, you say you don't know. I would think that would be relevant, and you would know if they had. Yes. Well, I think I can answer Your Honor's question. It's because Exxon did not pay. Exxon did not pay those invoices at all. So there wasn't a— You're saying it wasn't a matter of objection. It was they didn't pay them at all. That's right. Exxon asserted its set-off defense. It said, well, we acknowledge— I see what you're saying. Exxon acknowledged the money, but it said we're not going to pay it because we think you're going to end up owing us more. Well, but if that's so, how can you say they paid late when they didn't owe anything or the issue is whether they did? The issue was whether they did. Exxon only asserted that it believed that AECOM's bad welding, what have you, would amount to like $80 million and justify Exxon's withholding of payment. That's what went to the jury, and the jury found for AECOM much larger than for Exxon. So Exxon's set-off defense, which, by the way, the jury didn't seem to apply. If the jury had applied the set-off defense, it should have awarded Exxon nothing and awarded AECOM less. But you're not contesting the jury verdict. No, we are not contesting the jury verdict, Your Honor. You rather like the jury verdict. Yes, we do. We are only contesting the post-judgment rulings that reduced so much. So the question then becomes, why did the trial court enter a judgment as a matter of law? It wasn't based on Exxon's set-off argument. That was the argument that Exxon pressed. But the district court correctly determined that there was sufficient evidence to conclude that Exxon did not dispute those eight PPA invoices within the required 21 days. Rather, what the district court did was it sua sponte applied its prior summary judgment ruling, deciding that that was law of the case that it had to follow. And therefore, because the district court had previously rejected another comprehensive invoice that AECOM presented, that it had to also reject this one. And that's really where the district court erred. And I can point the court to the precise spot. It's at 1 ER 51 to 52. That's a portion of the district court's ruling where the district court recites that once the project went south, the party started to dispute pretty much everything, including entitlement to payment. The district court reasoned that the single comprehensive invoice that AECOM submitted, that was disputed. And these PPA invoices were also disputed. Therefore, the two types of invoices are the same and law of the case should apply. But that was wrong. Even if this court reviews it under an abuse of discretion standard for law of the case, it wasn't a palpable abuse of discretion because dispute does not remove a matter from the PPA. The PPA is built entirely for disputed invoices. What's different was that the single invoice didn't fall within the PPA's billing regime exception, the alternative billing regime. But the six PPA invoices did fall into the billing regime. The district court simply ruled that they did not, out of the blue, in that we're on the citation that I gave you. In fact, the court said, you know, as a consequence of the disputes, the PPA invoices, no longer a part of the regularly established milestone payment plan, converted into evidence of the highly contested dispute between the parties, which was the reason the district court ruled post-judgment that the PPA shouldn't apply. Where did the no longer part of the regularly established milestone payment plan come from? Those six PPA invoices were the invoices that were submitted and approved under the milestone payment plan. So for that reason, the district court completely misapprehended the Prompt Payment Act, and this court should reverse and remand for the addition of PPA interest. We're not asking this court to calculate the interest. That could be complex. That can be presented on remand adversarially, but this court should reverse and remand for the addition of that interest. Next, Your Honors, I'd like to address the verdict interpretation issue. That is a claim based on the way that the jury filled out the verdict form, that the value of those six PPA invoices worth about $8 million. The jury awarded that in addition to the $64 million breach of contract award. Instruction 42 on the PPA said that the claim was for the six PPA invoices, which are worth $8 million. The amounts were in evidence. So the jury was instructed that the PPA claim was for the PPA invoices. And the PPA, furthermore, says that when an invoice is owed, it's been deemed accepted it's owed, the owner shall pay. That's 28 to 2103 sub F. The owner shall pay. Granted, the ultimate obligation to pay the money owed is based in contract, not under the statute. But the statute does say when you owe the money, you pay the money. And when the court looks at the verdict, what did the jury do? It awarded $64 million for breach of contract on the account stated claim. It said, yes, ACOM is entitled to damages under the account statement. What were those damages? Zero. The court checked none of the four account stated invoices, which were a subset of the six PPA invoices. And then on the PPA invoice, PPA claim, it checked yes, ACOM is entitled to damages, and it checked all of those boxes. The only way to address the apparent inconsistency in the account stated claim is through the analysis that we've given. The jury was observing the instruction not to duplicate damages. It didn't award the account state invoices because those were included in the PPA invoices. They were a subset. Hence, those PPA invoices, the six invoices, are not in the $64 million claim. And I see that the court has no questions about that. I'll move on to prejudgment interest, which is, yes, that's an interesting claim. So prejudgment interest. This matter is subject to de novo review. We've given you the case law in our briefs. There has been some, I will only say, not perfectly accurate prior citations. The court can clarify that, and we're only asking for a clarification here. We're not suggesting that anything needs to be addressed en banc. Good. So the Montana prejudgment interest statute says that there are two predicates for obtaining prejudgment interest. The amount of damages must be capable, must be certain or capable of being made certain by calculation. And the right to recover is vested in the person on a particular day. Both of those predicates were satisfied. First, regarding the right to recover being vested on a particular day, under Montana law, the James Talcott case and the case that James Talcott relied on, they say that in this situation where the contractor files a construction lien, the date of vesting is the date that the lien was filed. The district court simply ignored that. The district court actually stated the opposite. The court stated in its ruling that there was no vesting on a particular day, ignoring the law that we presented. But that error aside, it is an error, but that error aside, the more contentious one is the question of being capable of being made certain by calculation. Well, Your Honors, the jury calculated damages. Now, there is nothing in the actual language of the statute that employs this disparity rule that the Montana Supreme Court has long applied and still applies most or some of the time, but not all of the time. That disparity rule doesn't come out of the statute. It is a common law judicial gloss on the statute. We have explained the historic roots of it, and we submit that the court can, in this eerie posture, rule by eerie interpretation. Before you even get to eerie prediction, this court can determine that the Montana Supreme Court would apply the statute to allow prejudgment interest here because that is what it did in James Talcott. The James Talcott case is far and away the most apposite case. Complex commercial construction, many categories of damages. There is no apparent way of matching up the request with the ultimate amount that the trier of fact finds, and in that position, the Montana Supreme Court specifically rejected the application of the disparity rule. In the James Talcott opinion, the court notes that the owner argues against prejudgment interest based on a case from the disparity line, the Maddox case, and the Montana Supreme Court declined to apply that rule in the situation before it. That is what the Montana Supreme Court would do in this situation as well. So that is the most straightforward way of exercising this court's eerie job to determine what the Montana Supreme Court would do here. There are yet other ways of approaching this. I think this doesn't even get to prediction either. I think this is also a straightforward eerie interpretation, that the court can address the disparity rule issue by determining that this jury calculated the damages and made them certain by calculation through the delay damages category and the productivity damages category. ACOM's expert in laying out its $102 million damages claim, there were a bunch of different categories of damages. Two of them, the expert testified, were based on the amount of, in this case, delay that the jury attributed to each side, and the amount of lost productivity that the jury could attribute to each side. And ACOM's expert, unlike Exxon's expert, acknowledged that the jury could determine how much damages were ACOM's fault versus, or delay damages, for example, and productivity loss, were ACOM's fault and how much were Exxon's fault, and even gave the jury a per diem amount to assign. So this was not a case like the, I'll say, the typical Montana case, where damages are all or nothing, where damage categories are all or nothing. In this case, the amount was, the jury had great flexibility, and the jury's award here was within the bookended parameters from ACOM's expert. And I see I'm already getting short on time. So I will simply ask the court that in addition to the calculation, the court also has the option of determining, or this would be a prediction, that the Montana Supreme Court would at least award prejudgment interest on the undisputed portion of the damages, because Price Building Services v. Holmes says that the goal of Montana law is to award prejudgment interest wherever possible. And then I will conclude and reserve the rest of my time for rebuttal by saying that if this court has any doubt about any of those analyses for awarding prejudgment interest, it should certify this matter to the Montana Supreme Court under the principle of cooperative federalism. Cases like this just rarely come up that pipeline, and the state court, I'm sure, would appreciate, although we would much prefer to have this court decide prejudgment interest in our favor. Thank you. I'll reserve the remainder of my time for rebuttal. Okay. Thank you. Good morning, Your Honors. May it please the Court. Mike Manning for Exxon Mobil Corporation. If it's okay with the Court, I'm going to start where we left off with prejudgment interest and the standard of review. It is absolutely abuse of discretion in this case under the Champion Produce case, a published Ninth Circuit case authored by you, Judge Fletcher, in 2003. It was a diversity case. It was a breach of contract case. It was a case where the court was applying an Idaho prejudgment standard that is much like Montana's, where the court interprets it to ask whether the amount is capable of ascertainment or mathematical computation. You know, I was a very young man at that time. The court applied abuse of discretion, and over those years, Judge Fletcher, this court has cited it, albeit in unpublished decisions, over and over again for the proposition that this court reviews district court's application of prejudgment interest under state law for abuse of discretion. The case cited by my friend in his opening brief arguing for de novo review is a Montana state law case. The Ninth Circuit law is equally clear that the question of a standard of review is a federal decision governed by federal law, and there's been no request here to alter the Ninth Circuit's law in terms of that standard. But honestly, whether it's abuse of discretion or de novo review, the district court applied Montana law correctly here. There is case after case after case in Montana saying that when the amount of a jury's verdict is not ascertainable until the verdict is actually delivered, it can't be traced back to an amount that the plaintiff is asking for. It can't be traced back to specific contractual amounts owing. And your position is that that's responsive to his argument that it at least ought to apply to undisputed amounts. Yes, but there were no undisputed amounts here. There wasn't anything even close to that. I mean, they asked for more than $102 million in damages. We asked for $93 million at one point. There was another figure earlier in the case that was $79 million. Neither party conceded that they owed the other a dollar. And the amount that they cite in their brief, this $44 million, comes from expert testimony about what the value of work might have been. After years of expert analysis, years of litigation, this is not a case like James Talcott at all. In that case, there was a final invoice. I think it was about $106,000. The owner writes off some of it down to about $83,000. And then they withhold specific amounts for very specific things tying to the contract. There was a $38,000 delay penalty. There was $15,000 for repainting, $10,000 for punch list work. This was not a case where we got their $144 million invoice and said, okay, well, you're owed some of it, and we're going to withhold $44 million for X, Y, Z, A, B, and C under the contract. And then the jury awards amounts, or we get to the trial and say, well, Exxon was wrong. They shouldn't have withheld X and Y, but Z was okay and A wasn't. And we can trace that back and decide how the jury got there. There's nothing even close to that in this case. James Talcott is consistent with all of the other Montana cases. And I'd refer you to the Higbee case, paragraph 32. The Montana Supreme Court says, this court has declined to allow an award of prejudgment interest in cases where the judgment awarded is less than the claim it sought and was not the result of a readily calculable offset. And then there's a string set of cases. I mean, there's case after case. Montana Petroleum Tank. We have consistently refused to award prejudgment interest in cases where the amount of damages due upon breach was not clearly ascertainable until determined by the trial court. I mean, that's this case. They asked for $102,000 or $102,855,577. The jury gave them $64 million for Exxon's breach of contract. They gave Exxon $20 million for Acom's breach of contract. The difference between that ask and what they were awarded was $38,855,577. And what you don't see, and what the district court ascertained here, is there's no way to trace that back. The jury didn't give them what they asked for. The jury didn't give them what they asked for, less some identifiable categories of damages that Exxon offset or that somebody identified. And just going back to the claim that Exxon admitted owing $44 million, the whole purpose of Montana prejudgment interest law, and I'd emphasize that the statute has been fundamentally identical since 1895, and the case law has interpreted the statute over and over again in the same way. Even a northern Montana hospital case, the court has interpreted this statute to mean that no interest can run until a fixed amount of damages has been arrived at either by agreement, that didn't happen here, appraisal, that didn't happen here, or judgment. So when the judgment entered, that's when the amount was fixed. And the whole point, they cite this in their 1931 case, is the idea under Montana law, and maybe it's different in other jurisdictions, but in Montana the idea is that prejudgment interest runs when the person who owes the debt could have tendered at the time, knowing what it was. If Exxon would have tendered or paid the $144 million invoice, they would have overpaid by $80 million in this case. If Exxon would have paid $102 million, they would have overpaid by $38 million in this case. It wasn't until the jury came back that anybody knew who owed what, who owed the other party what. So I'll move on to the Prompt Payment Act now, if there's no questions on prejudgment interest, and say that the district court got this one exactly right too. And fundamentally the reason she got it right was because the Prompt Payment Act scheme didn't apply here. And that's what the court held in the summary judgment context with respect to the $144 million invoice, but it applies equally to the rest of this. My friend says that the party's contract, which is 400-plus pages, altered the payment scheme undeniably, the milestone certificate process, the fact that there wasn't monthly billing. And we altered the payment time to 30 days, but we didn't alter the approval time. Well, the payment section was really an approval section too because it says once we go through the milestone certificate process, and the way that worked was ACOM gives an invoice along with a milestone certificate completion request. Exxon then verifies that that work was actually done. They would approve the milestone certificate. That would go back to ACOM, and ACOM could then submit the invoice for payment. And what the contract says at that point, Exxon has either 30 days to pay the invoice or to reject it, to send it back for some sort of deficiency. And just because the milestone certificate is signed and approved doesn't mean that the invoice is signed and approved. The contract gave Exxon 30 days to pay this back. And in practice, there's nothing in the record that suggests at all that this isn't just a litigation claim. There was never any scenario where ACOM came to Exxon and said, oh boy, you're stuck with this invoice because even though the contract gives you 30 days to pay it or send it back to us, you didn't do it within 21 days and we've got this Montana statute that we're going to rely on. That's what the Montana case law says too. The GEM contracting case, and admittedly, there's very little Montana case law on this issue. I mean, the Prompt Payment Act just doesn't come up very much. But it says the Prompt Payment Act is not a mandate that owners progressively pay contracts for billed amounts regardless of work quality or conformance with the contract. And the set-off provision is important here because the set-off provision is a contractual right that these parties bargained for. And so Exxon gets these four invoices, and I'll talk about the other two in just a minute, but Exxon gets these four invoices and it says, yep, everything's good, we're actually going to approve them. And then the dispute comes along, and this dispute had been brewing for quite some time. There's evidence in the record of a November 2018 letter where Exxon is saying that they're damaged. But by the time we get to March of 2019, Exxon is ready to exercise its set-off rights. And that set-off provision is extremely broad. And not only does it apply to this contract, it applies to other contracts with AECOM. I mean, it was a broad set-off right where if we're doing business with you and we think we have damages on some other project, we can set off amounts due here. And the language of that set-off provision is important because it talks about setting off amounts that are due. Even if the 21-day disapproval period applied and these amounts might otherwise become payable, presumptively payable, I should say, the set-off provision says you're setting off amounts that are due. And the only way to interpret AECOM's argument to be correct is to say that contractual provision didn't matter. Once the 21 days passed, Exxon had no more set-off rights. It couldn't set off any damages, at least against these invoices. That's how AECOM interprets it. And that makes very little sense in a contract interpretation context, particularly with respect to this kind of deal that is so complex where the parties aren't following the prompt payment scheme even a little bit. And the district court recognized that. But she also recognized that the remedy section of the Prompt Payment Act is the next section. It's not 21-03 where the disapproval period comes. It's 21-04. And the heightened interest under the Prompt Payment Act only applies if a contractually owing payment is withheld for more than 30 days. So the previous section, 21-03, makes it presumptively payable after seven days if there's no disapproval. But the interest only starts running under 21-04 if the payment under the contract is not made within 30 days. And the set-off here was 29 days, which was consistent with the 30-day contractual term. It was consistent with the remedy provision in the Prompt Payment Act. There's simply no way that the jury here should have had a Prompt Payment Act claim in front of it. And that's what the district court recognized, and that's the whole purpose of Rule 50, that in this scheme the jury shouldn't have been presented with a Prompt Payment Act claim. And I think that's particularly true with respect to the two invoices, 1655045 and 1655768. There's just flat out no proof in the record of when those invoices were submitted to Exxon. The only evidence that's cited is Trial Exhibit 1079, which is 3ER301-302. It's an email from ACOM months and months later in the fall of 2019 just summarizing a series of invoices. And with respect to those two invoices, it just says invoice dates and it says that Exxon rejected them, and it says Exxon rejected one of those invoices multiple times. But there's no evidence of when the invoice was submitted to Exxon for payment. We know from the other four invoices that the dates of the invoice don't match up to the submission date. If you look at the other four, the invoices are all dated February 8th. They're sent to Exxon then for signing of the milestone completion certificate on February 19th. And then six days after that, they're submitted for payment. So the fact that the invoice has a date on it doesn't tell us or the jury anything about when it was actually submitted to Exxon. And if there's no evidence about when it was submitted to Exxon, there could never be a violation of the Prompt Payment Act, even if the 21-day period applies because there's just no evidence to find that. I hear you correctly to say that the language of the PPA itself permits contracting parties to agree to a different arrangement for payment. Yes. And that's exactly what the district court found in the summary judgment ruling. So the only question is what do the parties agree to, and to what degree are they deviating from the act? Yeah. And I think that the district court correctly recognized in the summary judgment ruling that as this thing went on and the dispute got hotter and hotter, the invoicing procedures were followed. Sometimes they weren't followed. Others, I mean, there's no evidence of milestone completion certificates for these other two invoices that aren't in the record either. And what Judge Cavan, the magistrate judge, found in the findings and recommendations was that whatever the parties did here, whatever the parties agreed to as the project unfolded, it was not consistent with monthly billing for work and materials supplied for an ongoing project as contemplated by Montana Code Annotated 28-2-2103. And that's the statute that contains both the requirement of monthly billing and the approval period. And that extends through equally to all these other invoices too because fundamentally their claim is the same, that, hey, we sent you an invoice and you didn't disapprove it. And the district court said, no, that's not right. We're not operating under the Prompt Payment Act's regime here. We're operating under the contract. And I'd point out too that that finding was in that, yeah, that summary judgment ruling was in findings and recommendations initially that ACON didn't object to. They waived de novo review, and then the district court comes in and reviews it for clear error. And then subsequently in the post-trial motion process she applies it correctly as law of the case. And the only other thing I'd add on that is that the district court correctly corrected her error in giving jury instruction number 42 too because that instruction was misleading to the jury in two respects. First in that it suggested that you could recover principle, the $8 million under the Prompt Payment Act, which isn't the case. The only remedy in the Prompt Payment Act is increased interest. But it also instructed the jury that the Prompt Payment Act was violated. If ACON submitted an invoice to Exxon and Exxon did not provide written disapproval within 21 days. I want to make sure that you leave yourself enough time to address the $8 million that the six invoices were included in the award. Sure, and I can turn to that now, Judge Fletcher. Would you please? Yes. That actually kind of dovetails off of my last point, that the only remedy under the Prompt Payment Act is increased interest. And jury instruction number 42 led the jury to believe that it could find a submission of an invoice and failure to provide written disapproval within 21 days. And that was error as the district court recognized and corrected. So it's hardly surprising that we then have yes check marks on all six invoices because the jury says, well, it was undisputed that there was no disapproval within 21 days. The jury instruction tells me that the Prompt Payment Act was violated. So I have to check yes here. But the only way that the jury could ever award the $8 million principle amount of those invoices is for a breach of contract. If there's no breach of contract, there's no $8 million award. If AECOM had sued Exxon only for violation of the Prompt Payment Act and it had prevailed on those six invoices, what it would have gotten was a judgment that the six invoices were subject to 18% interest until they were paid in full. I mean, 22-2104, the remedy section of the Prompt Payment Act, even contemplates sort of partial payment on amounts owing it and requirements that if partial payment is made, some of the interest goes to subcontractors. There was never a scenario where the jury could have awarded $8 million as a Prompt Payment Act damage. And so the district court correctly construed the jury verdict, even if this court gets that far. And I'd emphasize, too, that on the standard of review, it's a de novo review for this court, but the underlying standard is the district court has to accept any reasonable interpretation of the verdict. And Judge Waters' interpretation here was eminently reasonable. If there's no further questions, thank you. Thank you. Thank you, Your Honors. Let me begin by addressing the standard of review for prejudgment interest. Exxon stands by its Champion Produce case that Your Honor authored, but I think, as Your Honor correctly realized, when you trace it back, it ultimately cites to that one was, I think, the federal maritime case. And in another line of cases, the AT&T case that we cite in the brief similarly trace back to bankruptcy law. In both of those federal contexts, there is no statutory award for prejudgment interest. Prejudgment interest is awarded at the district court's discretion. So that comes from a federal standard. By contrast here, no matter how the court approaches it, under Montana law, Montana applies de novo. The cases that we've cited also apply de novo for statutory review and apply de novo for determination of what the state law is. Therefore, it is a de novo standard of review. Exxon also argues that there is no basis for tracing the award. Well, we gave that basis in our brief. We showed that the precise amount of the award could be traced back based on the damages experts' testimony that allowed the jury to calculate the amount of damages. That's why it fits precisely within the confines of the prejudgment interest statute. Oh, regarding the PPA payment, Exxon argues that the 30-day payment provision in the contract, well, that is effectively a, that covers both payment and objection. But that's not the way the Montana Prompt Payment Act is structured. It has two separate timelines. One is the deadline for disputing. The other is the deadline for paying. And there is nothing in there about disputing. Under the reading, we'll either pay it in 30 days, or if we don't pay it in 30 days, we can assert some right to reject the invoice. But the statutory language saying that if you're going to apply set-off as a defense, and there's that list of seven defenses. Very good. Oh, and I want to note, oh, and I see that I'm out of time. So if you could wrap up. I will wrap up. Thank you, Your Honors. We would request that the court reverse the trial court's rulings, post-judgment rulings, and remand with instructions to construe the verdict as awarding the $8 million of PPA invoices in addition to the $64 million to award PPA interest and to award prejudgment interest to be determined in the district court. Okay. Thank both sides for your arguments. ExxonMobil versus AECOM Energy and Construction is now submitted, and that completes our argument session for this morning. Thank you both. And we are adjourned. Thank you. All rise.
judges: HAWKINS, FLETCHER, SMITH